Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT
### for the
Western District of New York ▾

#### Buffalo Division

JOHNNY CALIXTE-JAMES

_____
*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

-v-

Hon. Judge Caroline A. Wojtaszek, Carrington Crossley
ADA,Niagara County District Attorney's Office, Niagara
County Sheriff's Office Drug Task Force, Brian D.
Seaman, and All Known and Unknown LawEnforcement

_____
*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  **24 CV 211-JLS**

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☐ Yes  ☑ No

UNITED STATES DISTRICT COURT
FILED
MAR 11 2024
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Non-Prisoner Complaint)

---

#### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Johnny Calixte-James |
| Address | c/o 2201 pine ave side apt |
| | Niagara Falls |

| City | State | Zip Code |
|---|---|---|
| Niagara Falls | NY | 14303 |

| | |
|---|---|
| County | niagara |
| Telephone Number | 585-407-7778 |
| E-Mail Address | galaxstar777@gmail.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Hon Judge Caroline A. Wojtaszek |
| Job or Title *(if known)* | County Judge |
| Address | 175 hawley st |

| City | State | Zip Code |
|---|---|---|
| lockport | NY | 14094 |

| | |
|---|---|
| County | Niagara |
| Telephone Number | 716-280-6409 |
| E-Mail Address *(if known)* | |

☐ Individual capacity     ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Carrington Crossley |
| Job or Title *(if known)* | Assistant District Attorney |
| Address | 175 hawley st |

| City | State | Zip Code |
|---|---|---|
| lockport | NY | 14094 |

| | |
|---|---|
| County | Niagara |
| Telephone Number | 716-439-7000 |
| E-Mail Address *(if known)* | |

☐ Individual capacity     ☑ Official capacity

Defendant No. 3

| | |
|---|---|
| Name | Niagara County Sheriff's Office Drug Task Force |
| Job or Title *(if known)* | All Known and Unknown Law Enforcement |
| Address | 5526 niagara st ext |

| | | |
|---|---|---|
| lockport | NY | 14094 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Niagara |
| Telephone Number | 716-438-3393 |
| E-Mail Address *(if known)* | |

☐ Individual capacity   ☑ Official capacity

Defendant No. 4

| | |
|---|---|
| Name | Brian D. Seaman |
| Job or Title *(if known)* | Niagara County District Attorney |
| Address | 175 hawley st |

| | | |
|---|---|---|
| lockport | NY | 14094 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | Niagara |
| Telephone Number | 7164397000 |
| E-Mail Address *(if known)* | |

☐ Individual capacity   ☑ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),* you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials? I am claiming that I am being denied my right to access to the courts, I am being my denied my right to due process, I am being denied my right to due process and equal protection of the law, I am being denied my right to confront witnesses against me, as well as other rights as discovery may be turned over within the criminal proceedings.

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Not applicable here as of yet known by defendant but defendant will preserve such rights due to the fact that U.S. Marshalls did execute an unlawful arrest and search of my person and other relevant property.

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under federal law.  Attach additional pages if needed.
see attached affidavit in response to such question

## III.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?
NIAGARA COUNTY

B.   What date and approximate time did the events giving rise to your claim(s) occur?
LIST DATES HERE:05\31\2023, 06\01\2023, 06\15\2023, 06\22\2023, Aug 28, 2023 motions filed and plaintiff requested evidence to prepare defense for trial, Sep 5,2023 Judge refused motion DA received copies of motions, 10/13/2023, 01/05/2023

C.   What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*
SEE ATTACHED:

**IV.    Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.
no injuries

**V.    Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.
The plaintiff sues the defendents for damages in excess of ten millions due to the reckless disregard by the defendents in this case and gives his notice to this court at this time.

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.       For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        03/04/2024

Signature of Plaintiff

Printed Name of Plaintiff        Johnny Calixte – James

### B.       For Attorneys

Date of signing:        _____

Signature of Attorney        _____

Printed Name of Attorney        _____

Bar Number        _____

Name of Law Firm        _____

Address        _____

_____

|       | City | State | Zip Code |
|-------|------|-------|----------|

Telephone Number        _____

E-mail Address        _____

AFFIDAVIT OF JOHNNY CALIXTE-JAMES

In re: **State of New York v. Johnny Calixte-James**, **Indictment Number: 2022-435,** affidavit in
  Support of §1983 claims.


STATE OF NEW YORK)
COUNTY OF NIAGARA) ss:


I, JOHNNY CALIXTE-JAMES, being duly sworn deposes and states:

1. I declare that I am over 18 years of age and the defendant in the pending above captioned indictment number.
2. I declare that I am of a sound mind at the time of presenting these facts in support of my claims.
3. I declare that I am being denied a fair opportunity to defend myself or participate in my defense.
4. I declare that the judge assigned to this case, the prosecutor assigned to this case, and all law enforcement that conducted the investigation as well as those who presented such to the D.A.'s office did so unlawfully and in contradiction to the United States Constitution, the New York Constitution, and applicable laws of the state of New York.
5. I declare that the facts and circumstances surrounding the investigation were unlawful and violated my rights in contradiction to the United States Constitution and New York Constitution.
6. I declare that me and my wife have had to write complaints to the judicial complaint committee on at least two occasions in which we received decisions in our favor.
7. I declare that I have been denied access to the court by the judge in this case and denied access to material evidence needed to prepare a defense for trial.
8. I declare that law enforcement has refused or has not been asked by the prosecution to turn over evidence requested by me which the judge states[1] does not exist.
9. I declare that I do not remember the events the prosecution is alleging due to the length of the alleged incident(s).
10. I declare that I was arrested nearly a year after the alleged sells to a confidential informant and the delay in arrest has not been justified with a reasonable standard accepted in law.
11. I declare that the following state officials in their official capacity acted in an objectively unreasonable manner by acting with subjective unreasonable intent while in their official

---

[1] This is relevant because the judge has cited in her decision of denying a wade hearing because she states that there is evidence that the confidential informant has some familiarity with me. I have not nor has my attorney been presented with such evidence to the best of my knowledge.

capacity in violation of the laws of United States and New York in compliance with each entity's constitution.

12. **The judge** in this case was unreasonable in her actions when she summarily denied my request to the court without rendering a decision as to supplementing my defense attorney's omnibus motion[2].

13. **The prosecutor** in this case and during the grand jury proceedings has proceeded in this case without providing information that the judge has made decisions that me and my defense team does not have privy to.

14. **The law enforcement**[3] who investigated and handled all control buys and presented this case to the prosecution has not turned over evidence needed to prepare my defense despite my demands for such at every court proceeding so that me and my defense team may prepare a defense for trial.

15. It is my contention that the court proceedings are in contradiction to having invoked sufficient evidence that establishes probable cause in the case to prosecute me.

Whereas I am now seeking assistance from this honorable court to either have the relevant discovery turned over in my case or cease prosecution.

Dated: February 12, 2024

Johnny Calixte-James

In re; affidavit in support of 42 USC 1983 claims in *Indictment Number: 2022-435*
Cc: U.S. District Clerk Office (Buffalo), Niagara County Judge Caroline Wojtaszek, Niagara County Assistant District Attorney Carrington Crossley, Niagara County Sheriff's Office, and Niagara County Sheriff's Drug Task Force.

---

[2] The motion presented by my attorney left out the fact that I did not remember the incident and needed further discover of how the informant knew me as the investigating officers stated in their reports and in addition the investigating officers never showed any drug dealings before, during, or after to any one other than the alleged sells to the informant. I requested proof of the drug dealing to prepare a defense in my case as well as any antecedent justification made by any higher ups in law enforcement and how did they reach their decisions. Nothing has been turned over to prepare a defense on a sell or an informant I have no knowledge of.

[3] In my case, I am requesting the reports of all investigations that prove the alleged facts that the prosecution is stating in the court proceedings to establish probable cause as to the charged counts in the indictment. Information that is critical to my defense since the informant participated in the alleged controlled buys that I was arrested for nearly a year after such alleged buys.

Revised 05/01 WDNY

# AFFIDAVIT OF SERVICE
### (If you are having your signature notarized, use this form)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHNNY CALIXTE-JAMES                    ,

                      Plaintiff(s),                    AFFIDAVIT OF SERVICE

      v.                                    _____-CV-_____

HON CAROLINE A. WOJTASZEK, e.t. a.l.,         ,

                      Defendant(s).

STATE OF NEW YORK    )
COUNTY OF Niagara ___ ) ss.:

I, *(print your name)* Johnny Calixte-James , served a copy of the attached papers *(state the name of your papers)* Hon Judge Caroline A. Wojtaszek wade hearing desision, indicment papers, two seperate court transtripls, __two seperate judicial committee complaints, affidavit supporting section 1983 claims, pro se 15 complaint for violations of civil rights non prisoner documents__ _____

upon all other parties in this case
by mailing [ ✔ ] by hand-delivering [ ] *(check the method you used)*
these documents to the following persons *(list the names and addresses of the people you served)*
__Hon. Caroline A. Wojtaszek (Judge's chambers Niagara County Courthouse 175 hawley st lockport,NY 14094), Carrington Crossley ADA(Niagara District Attorney's Office 175 hawley st lockport,NY 14094), Niagara County Sheriff's Office Drug Task Force(5526 niagara st ext lockport,NY 14094), Brian D. Seaman DA( niagara county district attorney's office 175 hawley st Lockport, NY 14094)__

on *(date service was made)* _____

                                  _____
                                  *(your signature)*

Sworn to before me this 8th ___
day of March , 2024

_____
Notary Public

SYDNEY M DELMONTE
Notary Public - State of New York
NO. 01DE0002971
Qualified in Niagara County
My Commission Expires Mar 20, 2027

**NIAGARA COUNTY COURT**



**Hon. Caroline A. Wojtaszek**
**County Judge and Surrogate**

**JUDGE'S CHAMBERS**
Niagara County Courthouse
175 Hawley Street
Lockport, NY 14094
(716) 280-6409
(716) 280-6422 (fax)

**Holly E. Sloma, Esq., Law Clerk**
(716) 280-6404
**Melina K. Smith, Court Clerk**
(716) 280-6409
**Dona Chase, Confidential Secretary**
(716) 280-6403

January 23, 2024

Carrington Crossley, ADA
Niagara County District Attorney's Office
175 Hawley St.
Lockport, NY 14094

A. Joseph Catalano, APD
Niagara County Public Defender's Office
175 Hawley St.
Lockport, NY 14094

Re:  People v. Johnny C. James
     IND-71032-22/001
     DA Case #2022-435

Dear Counselors:

Enclosed herewith please find the Decision and Order issued by Judge Wojtaszek in connection with the above-captioned matter.

Should you have any questions, please call our office.

Very truly yours,

Dona L. Chase
Confidential Secretary

/dlc
Enc (1)

STATE OF NEW YORK
COUNTY COURT  :  COUNTY OF NIAGARA

PEOPLE OF THE STATE OF NEW YORK

      vs.                                Indictment No. 2022-435

JOHNNY JAMES,

              Defendant

### WADE HEARING DECISION

**APPEARANCES:**

**CARRINGTON CROSSLEY, ESQ.**
**Assistant District Attorney**

**A. JOSEPH CATALANO, ESQ.**
**Attorney for Defendant**

**WOJTASZEK, J.**

The Defendant stands charged with two counts of Criminal Possession of a Controlled Substance in the Third Degree (PL §220.16[1]) and Criminal Sale of a Controlled Substance in the Third Degree (PL §220.39[1]) relating to the alleged possession and sale of a narcotic drug to a confidential informant on April 4, 2022.

A *Wade* Hearing was held before this Court on January 5, 2024 relative to a six-person photographic array displayed to the confidential informant on April 26, 2022. At that hearing, one witness testified, Investigator Michael Licinio of the Niagara County Sheriff's Office's Drug Task Force, a law enforcement officer with over seventeen years experience.

Licinio testified that Detective Holmes was the lead investigator on the case. Holmes prepared the photo array, which contained the Defendant's photograph in photo

1

number 2. On April 26, 2022, with Holmes present, Licinio displayed the array to the confidential informant, who was previously familiar with the Defendant, but knew him only as "Dude." According to Licinio, the witness identified photograph number 2 as the individual he knew as "Dude," that is, the person who allegedly sold him cocaine on April 4, 2022.

At the hearing, the People offered a photocopy of the photographic array into evidence as People's #1. The photocopy was redacted in areas designated for the witness to write details of his identification on the array. On cross-examination, Licinio conceded to certain variations among other photographs contained in People's #1 in evidence from the photograph of the Defendant. Defense Counsel suggested that the individual depicted in photo #1 appeared thinner than Defendant, the individual depicted in photograph # 5 appeared to have a thinner face and the individuals in photos number 3 and #6 had larger and fatter faces than the Defendant.

Additionally, Defense Counsel argued that the exhibit, a photocopy of the original array, was an insufficient basis for this Court to make a determination, as Licinio also conceded that the photographs in the photocopy were, in fact, darker than the original. Licinio did not have the original for the Court to view, which also had original identifying information and written markings made by the confidential informant. The Court therefore ordered the People to provide the Court the original array for purposes of rendering its decision, and to arrange for Defense Counsel to view the photos contained in the original. The Court advised Defense Counsel that should he request, the hearing could be re-opened at his request for any additional cross-examination of Licinio.

After the hearing, the Court was advised via email that Defense Counsel did

2

have the opportunity to view the original photographic array shown to the witness. The original was also provided to the Court for review. The original was also in black and white format, but less dark as the photocopy originally offered as an exhibit. Defense Counsel also did not request the opportunity to open cross-examination after being provided the opportunity to view the original photographic array.

This Court then has studied the original six-pack photo array; and, although each individual has slight variations in appearance, these differences do not serve to make photograph number 2 stand out from the rest.

## LEGAL CONCLUSION

While the People have the initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness in a pretrial identification procedure, it is the defendant who bears the ultimate burden of proving that such procedures were so unduly suggestive as to deprive the defendant of due process (*People v. Hathaway*, 55 AD3d 1286, 1287-1288 [4th Dept 2008] and *People v. Chipp*, 75 NY2d 327, 335 [1990]). This Court finds that the People met their burden of establishing that the conduct of the police here was reasonable and that the photo array was not unduly suggestive and defendant failed to meet his ultimate burden of proving that the procedures were unduly suggestive.

A photographic array is deemed suggestive only if a photograph therein depicts a unique characteristic which draws the viewer's attention so as to indicate that the police have focused on a particular individual. See *People v. Parker*, 257 AD2d 693, 684 NYS2d 300 (3d Dept 1999) *lv denied* 93 NY2d 1015, 697 NYS2d 574 (1999) and 93

NY2d 1024, 697 NYS2d 583 (1999). That is certainly not the case with the photographic array displayed here.

Although here, it appears the confidential informant had a prior familiarity with the Defendant, it is not necessary for the Court to reach the question of whether the People have introduced clear and convincing evidence of an independent basis for the identification because they have met their burden of showing that the police here acted lawfully and that the pretrial identification procedure employed here was non-suggestive. The Defense has not established that the manner by which the identification procedure was employed or the photo spread itself was improper or suggestive in any way. Accordingly, an in-court identification by the witness will be permitted.

This constitutes the decision of this Court.


DATED: January 23, 2024

HON.   CAROLINE A. WOJTASZEK
NIAGARA COUNTY COURT JUDGE

4

STATE OF NEW YORK
COUNTY COURT   :        COUNTY OF NIAGARA

---

THE PEOPLE OF THE STATE OF NEW YORK

        -against-                                     Indictment No. 2022-435

JOHNNY C. JAMES,
                Defendant.

---

## COUNT 1

The Grand Jury, of the County of Niagara, by this indictment, accuse the defendant, JOHNNY C. JAMES, of the crime of Criminal Possession of a Controlled Substance in the Third Degree, in violation of §220.16(1) of the Penal Law of the State of New York, committed as follows:

The defendant, on or about April 4, 2022, in Niagara County, knowingly and unlawfully possessed a narcotic drug with intent to sell it, that is: the defendant possessed cocaine with intent to sell it.

## COUNT 2

The Grand Jury, by this indictment, further accuse the defendant, JOHNNY C. JAMES, of the crime of Criminal Sale of a Controlled Substance in the Third Degree, in violation of §220.39(1) of the Penal Law of the State of New York, committed as follows:

The defendant, on or about April 4, 2022, in Niagara County, knowingly and unlawfully sold a narcotic drug, that is: the defendant sold cocaine.

## COUNT 3

The Grand Jury, by this indictment, further accuse the defendant, JOHNNY C. JAMES, of the crime of Criminal Possession of a Controlled Substance in the Third Degree, in violation of §220.16(1) of the Penal Law of the State of New York, committed as follows:

The defendant, on or about April 7, 2022, in Niagara County, knowingly and unlawfully possessed a narcotic drug with intent to sell it, that is: the defendant possessed cocaine with intent to sell it.

## COUNT 4

The Grand Jury, by this indictment, further accuse the defendant, JOHNNY C. JAMES, of the crime of Criminal Sale of a Controlled Substance in the Third Degree, in violation of §220.39(1) of the Penal Law of the State of New York, committed as follows:

The defendant, on or about April 7, 2022, in Niagara County, knowingly and unlawfully sold a narcotic drug, that is: the defendant sold cocaine.

BRIAN D. SEAMAN
Niagara County District Attorney

Foreperson, November 2022 Grand Jury
Filed: NOV 2 3 2022

```
STATE OF NEW YORK        :     COUNTY OF NIAGARA
COUNTY COURT             :     PART 2
```
---

PEOPLE OF THE STATE OF NEW YORK,

      -vs-               DKT NO.:  IND-71032-22/001
                            DA NO.:   2022-435

JOHNNY C. JAMES,

               Defendant.           Wade Hearing

---

                          Niagara County Courthouse
                          175 Hawley Street
                          Lockport, New York 14094
                          January 5, 2024

HELD BEFORE:

                          HONORABLE CAROLINE A. WOJTASZEK
                          County Court Judge

APPEARANCES:

                          BRIAN D. SEAMAN, ESQ.
                          Niagara County District Attorney
                          BY:  CARRINGTON M. CROSSLEY, ESQ.
                          Assistant District Attorney
                          Appearing for the People

                          A. JOSEPH CATALANO, ESQ.
                          Niagara County Public Defender's Office
                          Appearing for the Defendant

2

**INDEX OF WITNESSES**

| FOR THE PEOPLE | DIR | CROSS | REDIRECT | RECROSS | VOIR DIRE |
|---|---|---|---|---|---|
| Michael Licinio | 10 | | | | 14 |
| Michael Licinio | 14 | 17 | | | |

**INDEX TO EXHIBITS**

| PEOPLE'S | | FOR ID | IN EVID |
|---|---|---|---|
| 1   Photo Array | | 3 | 15 |

\*          \*          \*

—

*PEOPLE vs. JAMES*                                         3

1      (Whereupon, Photo Array was marked as

2      People's Exhibit 1 for identification.)

3          THE CLERK:  The next matter on the calendar

4   is People of the State of New York versus Johnny James.

5   Please note your appearances for the record.

6          MS. CROSSLEY:  Carrington Crossley on behalf

7   of the People.

8          MR. CATALANO:  A. Joseph Catalano, Niagara

9   County Public Defender's Office, for Mr. James.

10  Mr. James is present in the courtroom at this moment.

11         THE COURT:  All right.  We are scheduled for

12  a Wade hearing today.  Are both parties ready to

13  proceed?

14         MS. CROSSLEY:  The People are ready.

15         MR. CATALANO:  I don't believe Mr. James is

16  ready, your Honor.

17         THE COURT:  I'm sorry.  Mr. James?

18         THE DEFENDANT:  Your Honor, for the record, I

19  still have not been given the full discovery, and I'm

20  still being denied access to the courts.  I would like

21  adequate access to these courts to file my motions, to

22  have my motions adopted by my attorney.  He's been

23  misinterpreting my request.

24         THE COURT:  All right.  So let's handle one

25  thing at a time.  First of all, I do want to say that

*PEOPLE vs. JAMES*                                    4

1    at our last appearance there was an agreement to have

2    the court listen to the audio in this matter for

3    audibility.  I did listen on the 20th of October, 2023,

4    to both files, and did -- or I do deem them audible so

5    there is that.  As far as discovery is concerned, the

6    court deemed the People ready for trial after discovery

7    had been turned over as of June 15th of 2023, so all

8    discovery has been turned over to the defense.

9         Mr. Catalano, what do you have to say about your

10   disclosure of discovery to Mr. James?

11             MR. CATALANO:  Your Honor, at this time

12   everything that we have received from the District

13   Attorney's Office has been turned over to Mr. James.

14             THE COURT:  All right.  And we have gone over

15   this before, Mr. James, but I'll reiterate it again

16   that your motions would have to be adopted by your

17   attorney for the court to consider them.  Have you had

18   an opportunity to review the motions in question?

19             MR. CATALANO:  Yes, your Honor. They're

20   redundant and to my motions that I had filed previous,

21   some of them say similar things.  They look like they

22   came from a -- something was pulled off the internet.

23   There's nothing new information in there from what I

24   was provided.

25             THE COURT:  All right.  And we're about today

*PEOPLE vs. JAMES*                                          5

1    to go forward with a hearing which is a suppression

2    hearing, for the court to hear the underlying facts and

3    circumstances of a photo array that was conducted in

4    this case, for the court to make a decision on that

5    legal issue.  So I, frankly, Mr. James, don't

6    understand what you mean by not having access to the

7    court.  You've been granted a suppression hearing.

8    That's been done.  There were no statements in this

9    case, so what exactly are you referring to that's not

10   being done by the court?

11          THE DEFENDANT:  For the record, your Honor, I

12   still have not been given the in camera proceedings as

13   regards to --

14          THE COURT:  You're not entitled to the in

15   camera proceedings. Hold on.  This -- the confidential

16   informant -- I just want to make sure.  Yes, the

17   confidential informant in this case is, by law, not to

18   be turned over by you -- not to be turned over to you,

19   the identity of that person.  The in camera review that

20   would have been done of the CI -- I thought these were

21   two buys, so I'm not sure what you're referring to.  Go

22   ahead.

23          THE DEFENDANT:  I'm sorry, your Honor.  You

24   kind of cut me off in the middle of speaking.

25          THE COURT:  Go ahead.

*PEOPLE vs. JAMES*

1    THE DEFENDANT:  Yeah.  So, like I'm saying

2    for the record, I have not been given any in camera

3    proceedings as regards to the investigation, how the

4    investigation started.  I have not been given adequate

5    access to the courts to allow my documents or my

6    motions to be filed that will open -- that will open it

7    up to allow me to properly -- to start a proper

8    defense, your Honor.  All this stuff that's been given

9    to me by the defense is basically based on belief and

10   information.

11    If the state said they have -- the only thing that

12   the state has provided me is their said CI, and this is

13   the only witness that the state said that they have.  I

14   have not been given adequate information in regards to

15   when this investigation started and when this

16   investigation has ended.  This has definitely --

17   definitely affects my guilt, my innocence or maybe

18   and/or punishment, your Honor, so I'm requesting that

19   the court provide these documents so I can properly

20   prepare an adequate defense, your Honor.

21    THE COURT:  Okay.  Thank you.  Miss Crossley,

22   can you place on the record, is there any in camera

23   proceedings that you're aware of in this case?

24    MS. CROSSLEY:  No, your Honor.

25    THE COURT:  All right.  So when you say,

*PEOPLE vs. JAMES*                                                    7

1    Mr. James, that it's "upon belief," I just want you to

2    fully appreciate that the DA's office is under an

3    obligation to provide all the information that is

4    required by law.  That information gets turned over.

5    If there is something that they are found later to be

6    in possession of that they didn't turn over, the court

7    has the ability to sanction them with regards to that

8    evidence.  I don't, nor does defense counsel, sit in

9    the District Attorney's Office and make sure every

10   piece of paper gets turned over to defense.  It's not

11   humanly possible.  So what does happen is the court

12   makes an inquiry of the District Attorney's Office that

13   they have fulfilled their obligation.  The defense has

14   the ability to review the information provided.  They

15   are very well equipped to look at that and know what to

16   expect in a case like this, and if something is

17   missing, they are to bring that to the court's

18   attention or challenge the prosecution on whether or

19   not everything's been turned over.

20        I can tell you that, by law, information regarding

21   a confidential informant does not get turned over until

22   the eve of trial, so that is denied.  And as far as an

23   in camera review -- or an in camera proceeding, there

24   has been none.  I have reviewed the grand jury minutes

25   in this case.  There was no search warrant in this case

*PEOPLE vs. JAMES*                                    8

1    that would have necessitated an in camera review.  And

2    you just heard, as an officer of the court from the

3    District Attorney's Office, that there is no such

4    proceeding.  So, I will give you one more second to say

5    whatever it is you have to say but then we are running

6    this hearing. Go ahead.

7              THE DEFENDANT:  For the record, your Honor,

8    like I stated just recently, I have not been given all

9    in camera proceedings.

10             THE COURT:  There is no in camera

11   proceedings.

12             THE DEFENDANT:  Your Honor, I apol -- my

13   apologies but I would like to finish.  I will give you

14   back --

15             THE COURT:  All right.  I'm going to give you

16   about five minutes.  What do you have to say?  I

17   already gave you your opportunity.

18             THE DEFENDANT:  Thank you, your Honor.

19             THE COURT:  Go ahead.

20             THE DEFENDANT:  All right.  So, like I said,

21   I have not been given all -- any in camera things

22   that -- that shows when this investigation started and

23   when this investigation has ended, so I cannot properly

24   set a defense if I do not know these things.

25             THE COURT:  Okay.

*PEOPLE vs. JAMES*                                            9

1    THE DEFENDANT:  The state has only provided

2    information, has not given me anything to properly

3    defend myself, your Honor.

4          THE COURT:  All right.  Your request is

5    denied.  We're starting the hearing.  Sit down.

6          MR. CATALANO:  Your Honor, just -- my client

7    has some items that he placed before the Appellate

8    Division.  I don't know what they are.  I think he

9    wanted to brief the court on what he placed before the

10   Appellate Division.

11         THE COURT:  What did you place before the

12   Appellate Division?

13         THE DEFENDANT:  My motions that I would like

14   for the court to accept, your Honor, but I did not ask

15   my attorney to speak on that.  Once again, I'm being

16   misinterpreted.

17         THE COURT:  Okay.

18         THE DEFENDANT:  He's misinterpreting.

19         THE COURT:  All right.  Thank you.

20   Everybody, please be seated.

21         MR. CATALANO:  Thank you, your Honor.

22         THE COURT:  All right.  We're going to begin

23   the Wade hearing.  How many witnesses do the People

24   have?

25         MS. CROSSLEY:  One, your Honor.

1          THE COURT:  Okay.  Thank you.  All right.

2     Any opening remarks?

3          MS. CROSSLEY:  The People waive.

4          THE COURT:  All right.  Defense?

5          MR. CATALANO:  No, your Honor.  Thank you.

6          THE COURT:  All right.  Thank you.  Call your

7     first witness.

8          MS. CROSSLEY:  Investigator Licinio.

9          THE COURT:  All right.  Good morning.  Please

10    raise your right hand.

11    M I C H A E L   L I C I N I O, Investigator, 5526 Niagara

12    Street Extension, Lockport, New York, having been duly

13    called and sworn/affirmed, took the witness stand, and

14    testified as follows:

15          THE COURT:  All right.  You can take a seat

16    and if you could tell us your first and last name,

17    spelling your last, please.

18          THE WITNESS:  Yes.  Investigator Michael

19    Licinio, L-I-C-I-N-I-O.

20          THE COURT:  And your business address.

21          THE WITNESS:  5526 Niagara Street Extension,

22    Lockport, New York.

23          THE COURT:  All right.  Your witness.

24    DIRECT EXAMINATION

25    BY MS. CROSSLEY:

11

*LICINIO - DIRECT - CROSSLEY*

1    Q    Could you tell us how you're currently

2  employed?

3    A    I am an investigator with the Niagara County

4  Sheriff's Office.

5    Q    How long have you been with the sheriff's office?

6    A    Seventeen-and-a-half years now.

7    Q    Okay.  As an investigator, what are some of the

8  typical duties and tasks that you perform?

9    A    Currently I'm assigned to the drug task force so I

10  investigate crimes involving narcotics, trafficking of

11  narcotics, firearms and other vice crimes.

12    Q    How long have you been with that department

13  specifically?

14    A    Since 2013.

15    Q    And prior to that, did you hold any other

16  assignments?

17    A    Yes.  So I've been an investigator since 2013.

18  I've been at the drug task force since 2017.  Prior to that

19  I was assigned to the road patrol division.

20    Q    All right.  Were you employed in that same fashion

21  in April of 2022?

22    A    Yes, I was.

23    Q    And directing your attention to April 26th of

24  2022, around 1:45 p.m., did you assist in an investigation

25  on that day?

1  A    Yes.

2  Q    Who was the target of that investigation?

3             THE COURT:  I'm sorry, could you give me that

4  date again?  I didn't hear it.

5             MS. CROSSLEY:  April 26th, 2022.

6             THE COURT:  Thank you.

7  BY MS. CROSSLEY:

8  Q    And who was the target of that investigation?

9  A    Johnny James.

10  Q    On April 26th, what was your role?

11  A    I gave a line-up -- a photo line-up to a

12  confidential informant for review.

13  Q    And prior to that day, did you have any other role

14  in that same investigation?

15  A    Yes.  My partner Detective Robert Holmes was lead

16  investigator, and I assisted him with the investigation.

17  Q    Did you prepare the photo array that you

18  administered on April 26th?

19  A    Yes.

20  Q    And did you, in fact, show it to somebody on that

21  day?

22  A    Yes, I did.

23             MS. CROSSLEY:  May I approach?

24             THE COURT:  Yes.

25  BY MS. CROSSLEY:

*LICINIO - DIRECT - CROSSLEY*                13

1    Q    I'm now showing the witness what's been marked for

2   identification as People's Exhibit 1.   Do you recognize this

3   document?

4    A    Yes.

5    Q    What is that?

6    A    It's a redacted photocopy of the original photo

7   line-up that I gave to the confidential informant.

8    Q    Is it fair to say the redactions relate to

9   information about the confidential informant?

10   A    Yes.

11   Q    And aside from those redactions, are there any

12   other differences between this document and the original

13   document?

14   A    This document is darker due to the photocopy.

15   Q    Is your signature on this document?

16   A    Yes, it is.

17   Q    And is this, in fact, the same document that was

18   viewed and signed by the confidential informant?

19   A    It is a accurate photocopy of the original, yes.

20        MS. CROSSLEY:  I would now offer People's

21   Exhibit 1 into evidence.

22        MR. CATALANO:  Just a couple of --

23        THE COURT:  Voir dire?

24        MR. CATALANO:  Please, your Honor, a couple

25   of voir dires.

*LICINIO - DIRECT - CROSSLEY*                    14

1   VOIR DIRE EXAMINATION

2   BY MR. CATALANO:

3       Q    Did you just state that this is a darker copy?

4       A    Yes.

5       Q    So it's not a true and accurate depiction because

6   it's darker than the original.

7       A    It is darker than the original, yes.

8               MR. CATALANO:  Okay.  Your Honor, based on

9       that, I would object to it being offered into evidence.

10      He's just declared that it's not the same.

11              MS. CROSSLEY:  Your Honor, I would -- I would

12      respond by saying this is the best quality we could

13      obtain after photocopying the original, and it fairly

14      and accurately depicts the information.

15              THE COURT:  Where is the original?

16  DIRECT EXAMINATION (CONTINUED)

17  BY MS. CROSSLEY:

18      Q    Is that something that's held in the drug task

19  force office?

20      A    Yes.  I believe it would be in Detective Holmes'

21  file.

22              THE COURT:  All right.  I will consider the

23      weight of it but, nevertheless, I'll allow it over

24      objection for the purpose of this hearing.  Mark it

25      received.

LICINIO - DIRECT - CROSSLEY                          15

1          (Whereupon, People's Exhibit 1 marked for

2          identification was received in evidence.)

3   BY MS. CROSSLEY:

4       Q    Now showing the witness what's in evidence as

5   People's 1.  Prior to showing this array to a confidential

6   informant, did you provide instructions for what was to be

7   done?

8       A    Yes.

9       Q    Are those instructions something that you read?

10      A    Yes.

11      Q    Are those instructions printed on People's Exhibit

12  1?

13      A    Yes, they are.

14      Q    Was the CI able to identify anyone in the array?

15      A    Yes.

16      Q    Did that person circle and initial the number

17  relating to that person's photograph?

18      A    Yes.

19      Q    Which number is that?

20      A    Number 2.

21      Q    And who did the CI identify that person as?

22      A    The person that sold them crack cocaine.

23      Q    Did the CI know any nickname relating to that

24  individual?

25      A    Yes.

*LICINIO - DIRECT - CROSSLEY*

1   Q    What was the nickname?

2   A    Dude.

3   Q    Was anybody else present when the photo array was

4   administered?

5   A    Yes.

6   Q    Who was that?

7   A    Detective Holmes.

8   Q    Did you or Detective Holmes suggest or point who

9   the CI was supposed to select?

10  A    No.

11  Q    Are you aware of the legal name of the person

12  pictured in Number 2?

13  A    Yes.

14  Q    What is that?

15  A    Johnny James.

16          MS. CROSSLEY:  The People have no further

17  questions.

18          THE COURT:  I just have one question for this

19  officer.  Investigator Licinio, you indicated that you

20  were aware of the legal name of the person depicted in

21  Number 2. How would that be?  How did you know his

22  legal name?

23          THE WITNESS:  In order to do the photo array,

24  Detective Holmes identified him and told me.

25          THE COURT:  Okay.  All right.  Any further

1       questions from the People after the court's question?

2                   MS. CROSSLEY:  No, your Honor.

3                   THE COURT:  All right.  Thank you.  You may

4       cross.

5                   MR. CATALANO:  Thank you, your Honor.

6   CROSS-EXAMINATION

7   BY MR. CATALANO:

8       Q    Investigator, how are you today?

9       A    Good. How are you?

10      Q    Good. Now, how did you come about having Mr. James

11  as a suspect?

12      A    The confidential informant brings that information

13  to Detective Holmes who he can purchase narcotics from.

14      Q    Do you know what date that was?

15      A    Not off the top of my head, no.

16      Q    Was it -- how long before this alleged buy did

17  that happen?

18      A    Before the alleged buy?

19      Q    Yeah.

20      A    It would have been a short period of time.  I

21  couldn't tell you exactly, though.

22      Q    Now, you said Detective Holmes knew of the actual

23  name Johnny James, correct?

24      A    Yes.

25      Q    And where did he learn that from, do you know?  If

*LICINIO - CROSS - CATALANO*

1    you know.

2        A    I don't know.

3        Q    Okay.  Now, when you get to a line-up, how does

4    that come about?

5        A    After the course of the investigation, the

6    controlled purchases are done, we proceed to make a line-up

7    that is shown to the confidential informant.

8                    THE COURT:  It's a line-up or a photo array?

9                    THE WITNESS:  Photo array.

10                   MR. CATALANO:  I apologize.  Photo array.

11                   THE COURT:  All right.  Thank you.

12   BY MR. CATALANO:

13       Q    But how do you get to that six-pack?

14       A    How do we make it?

15       Q    Yeah.

16       A    We have a software, an application on our

17   computers some of us have access to.  We know who our

18   target, our suspect is, we obtain a photo of them, place it

19   into the photo array and then go through the system and

20   select other individuals that are similar in appearance to

21   the suspect.

22       Q    So you select the individual to go in the

23   six-pack.

24       A    Yes.

25       Q    Now, you didn't have a description.  You just had

*LICINIO - CROSS - CATALANO*

1   a name; is that correct?

2       A    Of Mr. James?

3       Q    Yes.

4       A    Well, I had his name and a photograph of him.

5       Q    Okay.  Now, let's draw your attention to, I guess

6   this would be People's 1 in evidence, which you've already

7   stated is a darker version of the actual original.  Now, it

8   appears that Mr. James was picked out of the top center,

9   correct?

10      A    Yes.

11      Q    Okay.  Now, if we look to the gentleman to the

12   left of him, would you agree that his face is much skinnier?

13      A    It's a little bit skinnier.

14      Q    Okay.  And then if we go -- that would be Photo

15   Number 1.  We go down to Photo Number 4, and even given the

16   fact that it's a darker copy, that person seems to be --

17   have much, much darker skin than Mr. James; is that correct?

18      A    In this copy that I said is darker, yes.

19      Q    Okay.  Then we go down to photo five and that

20   individual seems to have a longer, thinner face than

21   Mr. James; is that correct?

22      A    Maybe a little bit.

23      Q    Okay.  And if you go to photos three and six,

24   three being just to the right of Mr. James and six being

25   below and to the right of Mr. James, those two individuals

*LICINIO - CROSS - CATALANO*

1  have larger faces or fatter faces than Mr. James; is that

2  correct?

3      A    Maybe just a little bit but not much.

4      Q    Okay.  So out of the six -- five photos that are

5  not Mr. James, one has a skinnier face, one has a much

6  darker complexion, and then the other two -- other three --

7  other three -- excuse me -- have fatter faces.

8      A    I mean, mild differences that everyone -- I can't

9  put six photos of Mr. James in this photo array so everyone

10 in this earth looks different unless you're an identical

11 twin.  We try to get them as close as we can --

12     Q    I understand that.

13     A    -- with what we have.

14     Q    Okay.  But that is -- that is correct, right?

15     A    That they're --

16     Q    They're different.

17     A    -- similar but different?

18     Q    Okay.  Yes.

19     A    They are very similar but different in -- from the

20 aspect of people don't look exactly the same.

21     Q    Okay.  Now, you said that Mr. James would have

22 been brought to your attention by the CI a short period

23 before you initiated this first buy.

24     A    I didn't initiate the buy.

25     Q    No, I understand.  I understand you did not.  Your

*LICINIO - CROSS - CATALANO*

1   investigation initiated the first buy.

2        A    Detective Holmes' investigation, yes.

3        Q    And you were assisting him.

4        A    Yes.

5        Q    Okay.  So is that the normal proper procedure,

6   that a CI comes with information and within a couple of

7   days, you set up a buy?

8        A    It could be a couple days.  It could be that day.

9   When they come with the information, depending on what is

10  going on that day, what our schedules look like, we then go

11  out and do controlled purchases.

12       Q    Okay.  And you yourself didn't know who Mr. James

13  was prior to this, correct?

14       A    Prior to this investigation?

15       Q    Yes.

16       A    No.

17       Q    He was not, quote, unquote, on your radar prior to

18  this?

19       A    I can't really recall.  Again, we only knew him as

20  Dude at that time, and we had to put a little more work in

21  to identify him as Johnny James.

22       Q    Okay.  And this confidential informant, had he

23  ever been used before?

24       A    Had they been used before?

25       Q    Yes.

*PEOPLE vs. JAMES*                                    22

1    A     For other cases, yes.

2              MR. CATALANO:  That's all I have.  Thank you,

3    your Honor.

4              THE COURT:  Any redirect?

5              MS. CROSSLEY:  No, your Honor.

6              THE COURT:  All right.  You may step down.

7    Thank you.

8              THE WITNESS:  Thank you, your Honor.

9              (Whereupon, the witness was excused.)

10             THE COURT:  Does District Attorney's Office

11   have any additional witnesses?

12             MS. CROSSLEY:  No, your Honor.

13             THE COURT:  People rest?

14             MS. CROSSLEY:  We rest.

15             THE COURT:  All right.  Any witnesses from

16   the defense?

17             MR. CATALANO:  No, your Honor.  Thank you.

18             THE COURT:  All right.  The defense rests?

19             MR. CATALANO:  Yes.

20             THE COURT:  I am going to listen to any

21   argument but then I'm going to take the item in

22   evidence, People's 1, and review it in chambers before

23   issuing a decision.  So, go ahead.  Any closing

24   remarks?

25             MS. CROSSLEY:  Just briefly, your Honor.

*PEOPLE vs. JAMES*                                    23

1    People's witness has established that police conduct

2    was reasonable and that the procedure was not

3    suggestive.

4            THE COURT:  Mr. Catalano?

5            MR. CATALANO:  Yes, your Honor.  Thank you.

6    I think the testimony of the investigator is clear.

7    One of the photos is darker -- much darker.  Even given

8    the fact that this is not a true and accurate copy of

9    the original, that two of the faces are slimmer than --

10   and when the court looks at it will notice they're much

11   slimmer and longer than Mr. James, and the other two

12   are much wider and shorter than Mr. James.  So you have

13   two that are shorter and wider, two that are longer and

14   thinner and then one that is darker.  So Mr. James's

15   photo is going to stand out from that.  He is much

16   different in that photo than the other five

17   individuals.  And based on that, your Honor, I would

18   ask the court to disqualify the People from using that

19   photo during trial.

20          THE COURT:  All right.  Thank you.  I will

21   review the item in evidence and take a ten-minute

22   recess.

23          (Whereupon, a recess was taken from 11:24

24          a.m. until 11:29 a.m.)

25          THE COURT:  All right.  We're back on the

*PEOPLE vs. JAMES*                                    24

1    record on the People versus Johnny James.  Let the

2    record reflect that Mr. James is present along with his

3    attorney, Mr. Catalano, as well as the District

4    Attorney's Office represented by Miss Crossley.  This

5    court has had the opportunity to review People's

6    Exhibit 1 that is in evidence, and I have a couple of

7    questions for defense counsel.  Have you ever seen the

8    original?

9           MR. CATALANO:  I have not seen the original,

10    your Honor.

11           THE COURT:  Have you seen a colored copy?

12           MR. CATALANO:  That is the only copy I've

13    seen, your Honor.

14           THE COURT:  All right.  So this is

15    unacceptable to the court.  What I am proposing happen,

16    so that I can make a true review of the photo array

17    that was administered in this case, I need the original

18    or a colored copy to be given and distributed to the

19    defense, and the court would like to see the original.

20    So -- and, for example, People's -- the photograph in

21    Number 4, I can see barely any features but the

22    slightest dot of the white of the person's eyes.  I

23    cannot make a determination on this, nor do I ever,

24    frankly, want to see a black and white copy of a black

25    male in a photo array in a hearing again.

*PEOPLE vs. JAMES*                                              25

1        So, with that, what I'm going to ask is that that

2   be provided, a colored copy be provided.  I understand

3   that there's no information about the CI to be turned

4   over, by law, at this juncture, but a better copy needs

5   to be given, and I want the exact copy that was given

6   to Mr. Catalano and the original submitted to the

7   court.  All right?

8             MS. CROSSLEY:  Your Honor, for what it's

9   worth, the original is also in black and white.  Would

10  it be best to arrange like a viewing for Mr. Catalano

11  rather than requiring another color copy of the black

12  and white original?

13            THE COURT:  I want what was given to the CI

14  to be viewed by Mr. Catalano and the court.  That's

15  what I want.

16            MS. CROSSLEY:  Okay.

17            THE COURT:  So if a black and white version

18  was given to the CI -- which I would be surprised by --

19  but if that's the case, that's the case, and then I'll

20  review it from there, but I'm giving you an opportunity

21  to provide it to the court for the court's proper

22  review.  So, my decision is reserved.  All right?

23            MR. CATALANO:  Thank you, your Honor.

24            THE COURT:  We'll give you another court

25  date.  We'll put it out a little bit, just so that this

*PEOPLE vs. JAMES*

26

1  can be effectuated.

2          THE CLERK:  February 8th at 9:30 -- or I'm

3  sorry, March 8th at 9:30.

4          THE COURT:  And, Mr. Catalano, if after you

5  review this material, if you want to make a motion to

6  reopen because you have additional questions, the court

7  will consider that.

8          MR. CATALANO:  Thank you very much, your

9  Honor.

10          THE COURT:  All right.  Thank you.  All

11  right.  We'll see you at the next court date.

12          MS. CROSSLEY:  Thank you.

13          MR. CATALANO:  Thank you, your Honor.

14          (Proceedings concluded.)

15              *    *    *

16  The foregoing is certified to be a true and accurate

17  transcript according to my stenographic notes.

18

19                              Michell A. Jacob
                                Official Court Reporter

20

21

22

23

24

25

STATE OF NEW YORK        :     COUNTY OF NIAGARA
COUNTY COURT             :     PART 2

————————————————————————————————————

PEOPLE OF THE STATE OF NEW YORK,

      -vs-                      DKT NO.:  IND-71032-22/001
                                   DA NO.:   2022-435
JOHNNY C. JAMES,

                 Defendant.         Pre-Trial Conference
                                   and Motion

————————————————————————————————————

                                Niagara County Courthouse
                                175 Hawley Street
                                Lockport, New York 14094
                                September 5, 2023


HELD BEFORE:         HONORABLE CAROLINE A. WOJTASZEK
                    County Court Judge


APPEARANCES:         BRIAN D. SEAMAN, ESQ.
                    Niagara County District Attorney
                    BY:  CARRINGTON M. CROSSLEY, ESQ.
                    Assistant District Attorney
                    Appearing for the People


                    A. JOSEPH CATALANO, ESQ.
                    Niagara County Public Defender's Office
                    Appearing for the Defendant

*PEOPLE vs. JAMES*                                    2

1    THE CLERK:  The next matter on the calendar

2    is People of the State of New York versus Johnny James.

3    Please note your appearances for the record.

4    MS. CROSSLEY:  Good morning.  Carrington

5    Crossley appearing on behalf of the People.

6    MR. CATALANO:  A. Joseph Catalano, Niagara

7    County Public Defender's Office, for Mr. James.

8    Mr. James is present in the courtroom at this time.

9    THE COURT:  All right.  Good morning.

10    MR. CATALANO:  Good morning, your Honor.

11    THE COURT:  I did receive quite a lengthy

12    motion on behalf of Mr. James filed by Mr. Catalano on

13    August 22nd, and I just received the People's response.

14    And I know that first motion was late and now we have

15    the response coming in September 1st.  I have not had a

16    chance to review that.  In light of the request by the

17    defense, I don't know if either party would like to add

18    to their motion and response by way of any argument

19    today to be considered by the court in the court's

20    review.  You're welcome to do that today.  But I also

21    want to mention that the court did receive a pro se

22    motion from Mr. James that came in, again, late last

23    week.

24    Just so that I explain to you, Mr. James, when you

25    are represented by counsel, the court will not consider

*PEOPLE vs. JAMES*                                           3

1   your motion unless that is reviewed and adopted by your

2   attorney.  So, anything you say in court can be used

3   against you.  I ask that you talk to your attorney

4   before you make any further comment.  Can you talk to

5   your attorney?

6            (Whereupon, counsel and defendant conferred

7            off the record.)

8            THE DEFENDANT:  Your Honor, I do understand I

9   should have gone through my attorney.  I initially went

10  through my attorney.  He refused to submit these

11  supplemental motions.  I just found these issues have

12  merit in this court pertaining to this case, your

13  Honor, so I just took it upon myself, and there's no

14  other way for me to do so other than to have them

15  submitted --

16           THE COURT:  All right.

17           THE DEFENDANT:  -- because, your Honor, there

18  were issues, unresolved issues in this case that

19  pertain to my innocence, to my guilt and to my

20  punishment, and I wanted to address those issues.

21           THE COURT:  All right.  Well, it appears

22  we're at a bit of a conundrum because, like I said,

23  that is the position of the court.  And attorneys can

24  only stand here as an officer of the court and put

25  forth arguments that they believe have legal merit, so

*PEOPLE vs. JAMES*

4

1   your motion will not be responded to until you two

2   reconcile those issues.  I don't know if you need to

3   have further time to go over the issues contained in

4   your motion, but the People will not respond, and the

5   court will not issue a decision unless it's put forth

6   by your attorney.  So it seems that you at the moment

7   are at an impasse, but I can certainly give you more

8   time to work through that.

9        MR. CATALANO:  Your Honor, I haven't seen

10   this direct motion but there were a number of

11   motions -- pro se motions that he sent to me.  Most of

12   them were the sovereign citizen issue arguments which

13   really have no basis, no merit.  We've been through

14   this a number of times, your Honor, in this court.

15   That is why they were not filed.

16        THE COURT:  All right.  Go ahead, Mr. James.

17        THE DEFENDANT:  Your Honor, my motion is most

18   definitely does not pertain to sovereign citizen.  My

19   motion pertain to the first instance.

20        THE COURT:  What does that mean?

21        THE DEFENDANT:  First instance, as far as you

22   know, what gave the courts jurisdiction to pursue the

23   defendant on this matter on whether -- whether I was

24   requesting all in camera proceedings in this matter,

25   your Honor, so I do feel like my motions have merit.

*PEOPLE vs. JAMES*                                    5

1   And, like I said, your Honor, I understand that you

2   may, may not find that it's -- I guess valid for you so

3   I will be -- I will be moving forward interlocutory

4   appeal.

5                 (Court reporter requested clarification.)

6                 THE COURT:  Interlocutory.

7                 THE DEFENDANT:  Yes, interlocutory appeals.

8                 THE COURT:  So, sir, just -- you're welcome

9   to do what you think is right for your best interest,

10  but the legal terms that you have just thrown out to

11  the court, frankly, do not make legal sense to the

12  court in the way that you're presenting them, so here

13  is your issue:  I will not consider your motion when

14  you are represented by counsel.  If you are asking to

15  represent yourself and put forth your own motions, then

16  we will go through the questions that would go toward

17  whether or not you want to represent -- represent

18  yourself.  With that comes a lot, because you would

19  then be representing your own interest without the

20  benefit of someone who has legal training.  It's a

21  lengthy colloquy that I will go through with you

22  because you would be giving up a very important right

23  that you have to be represented by counsel.

24       What I would suggest you do is that you sit down

25  with Mr. Catalano and have a further meeting.  We can

PEOPLE vs. JAMES                                            6

1    bring you back here on another day and give you a

2    chance to think about that because it is a very big

3    decision, but this court will not consider your motion

4    while you are represented by counsel.  So what would

5    you like to do?

6              THE DEFENDANT:  Mr. Catalano, he's -- has no

7    reason to leave.  I most definitely will have him

8    consider submitting my motions.

9              THE COURT:  All right.  So do you want to

10   adjourn this for two weeks and come back after you've

11   had an opportunity to meet with Mr. Catalano?

12             THE DEFENDANT:  I would like more time than

13   that, your Honor.

14             THE COURT:  I can give you three weeks, no

15   more than a month.  We have to move this case along.

16             THE DEFENDANT:  Okay.  Most definitely, your

17   Honor.

18             THE COURT:  How much?

19             THE DEFENDANT:  A month would be fine, your

20   Honor.

21             THE COURT:  All right.  And you can also in

22   that time consider obtaining your own counsel, if you

23   so choose.  All right.  We'll give it a month, time

24   chargeable to the defense.

25             THE CLERK:  October 13th at 9:30.

*PEOPLE vs. JAMES*                                                7

1          MR. CATALANO:  That's fine.  Thank you, your

2     Honor.

3          THE COURT:  All right.  Thank you.  In the

4     meantime, I did receive, like I said -- sir, we're not

5     leaving yet.  We still are talking.  I did receive the

6     People's response.  I will review that in the interim.

7          Is there anything further at this time,

8     Mr. Catalano, you would like to say on the motion filed

9     by you?

10         MR. CATALANO:  Your Honor, the only thing I

11    would like to mention is that I was never provided -- I

12    know there's a protective order in place, but I was

13    never provided the body cam worn by the CI.  I was able

14    to view it with Miss Carrington.  That's where I got

15    the argument that -- regarding the audibility hearing.

16         THE COURT:  Oh, all right.

17         MR. CATALANO:  But I have never been provided

18    it, so I've only been able to look at it once.  I know

19    that the protective order prevents me from giving it to

20    Mr. James, however, I don't believe it prevents the

21    People from providing it to me.

22         THE COURT:  Miss Crossley?

23         MS. CROSSLEY:  The People are open to

24    allowing Mr. Catalano to view it as many times as he

25    wishes in the context of our offices, but we would hold

\

*PEOPLE vs. JAMES*

1    the position that the protective order and protection

2    allows to withhold that information.

3         THE COURT:  All right.  At least on that

4    issue, Mr. Catalano, you can view it as many times as

5    you want at this point.  If you feel that that's not

6    sufficient, then you can make motion to the court.

7         MR. CATALANO:  Well, your Honor, part of the

8    issue is, you know, if we proceed down this road, I

9    would like -- I may want an expert to review the

10   quality of the video, the audibility of it.

11        THE COURT:  Do we need to have an audibility

12   hearing?

13        MR. CATALANO:  I believe so, your Honor.  I

14   mean, there's parts of it that you cannot hear

15   anything.

16        THE COURT:  All right.  Anything you'd like

17   to say on that?

18        MS. CROSSLEY:  That's one of the sections

19   that the People have responded to in our motion.

20        THE COURT:  All right.  I will further review

21   that regarding audibility.

22        MR. CATALANO:  Thank you, your Honor.

23        THE COURT:  Anything else, other than that

24   issue you would like to highlight for the court?

25        MR. CATALANO:  Not at the moment, your Honor.

9

*PEOPLE vs. JAMES*

1    Thank you very much.

2          THE COURT:  All right.  Miss Crossley,

3    anything from you?

4          MS. CROSSLEY:  In the defense counsel's

5    motion, he requested this court to review --

6          THE COURT:  I'm sorry.  Could you --

7          MS. CROSSLEY:  Defense's motion requested the

8    court's review of the grand jury minutes and exhibits,

9    and the People did consent to that in our motion.  I

10   don't know if we'd want to wait in providing those

11   materials to the court or if we want to do that now, we

12   do have those available.

13         THE COURT:  All right.  I'll take that now so

14   that I can have everything reviewed before the next

15   appearance.  All right.  Thank you.  I am in receipt.

16         MR. CATALANO:  Thank you, your Honor.

17         THE COURT:  All right.  Anything further from

18   either side until we meet again?

19         MS. CROSSLEY:  No, your Honor.

20         MR. CATALANO:  No -- oh, just is there an

21   offer, just so we have it on the record?

22         MS. CROSSLEY:  There is.  The offer is to the

23   class D felony of criminal sale of controlled substance

24   in the fifth degree, under Penal Law 220.31,

25   conditioned upon $440 of restitution and waiving the

*PEOPLE vs. JAMES*                                    10

1   right --

2            THE COURT:  I'm sorry.  You're talking very

3   fast, which I should talk, but go ahead.  What was

4   that?  Criminal sale of a controlled substance in the

5   fifth degree, in violation of Section 220 -- go ahead.

6            MS. CROSSLEY:  Section 220.31, conditioned

7   upon $440 of restitution and waiving the right to

8   appeal.

9            THE COURT:  Oh, thank you.  All right.  All

10  right.

11           MR. CATALANO:  Thank you, your Honor.

12           THE COURT:  All right.  Thank you.

13           (Proceedings concluded.)

14                  *       *       *

15  The foregoing is certified to be a true and accurate

16  transcript according to my stenographic notes.

17

18  Michell A. Jacob
    Official Court Reporter

19

20

21

22

23

24

25

From:  **Janaea Spires** janaeaspires4@gmail.com

Subject:  **Re:**

Date:  **February 10, 2024 at 4:15:41 PM**

To:  **Johnny James** wenu4@icloud.com

On Fri, Jun 16, 2023 at 6:27 AM Janaea Spires <janaeaspires4@gmail.com> wrote:

I am filing a complaint of judicial misconduct on judge Wontaszek on the grounds of using coercion tactics to force defendants into using public defenders and the violation of defendant Johnnys constitutional rights, and lastly, for the abuse of authority and violation of my janaea calixte-James 1st amendment constitutional right as well.

Judge Wojtaszek informed the defendant Johnny whom is my husband If he did not accept the public defender and he chose to represent himself, in which she would have to take him though a series of questions, that if she had to do that he would not be able to get an attorney at any other given time. To be more clear in her words she stated "you will sit every hearing until this case is over without an attorney if you choose self representation." Moreover, this is a violation of Johnny James sixth amendment right and it is a form of coercion by using intimidation tactics to force the use of public defenders on the accused.

I've heard the judge off the record after removing Johnny James from the courtroom speaking negatively on him to other officers of the court whom I will be filing grievances on.

I was informed by the public defender who the judge tried to force on my husband that I should ignore the false information giving by the judge because we had bigger issues to worry about such as the charges. That is very unethical and it shows that this court knowingly and intentionally gives these defendants false information and the public defenders are clearly not working for their clients by asking you to ignore that kind of ethical issue.

I tried to have a word with my husbands public defender on 6/15/2023 after he was arrested and sentenced to 30 days in jail for contempt of court when asking about jurisdiction issues, and his so called public defender denied having a word with me and did not speak up for my husband once. The judge told me to "get out of her courtroom," which brings me to another issue. I did not violate any rules of the courtroom, nor did I disrespect or interrupt any one or any proceedings. Moreover, I have the first amendment right or access, held by the supreme court to attend any criminal proceedings as it is an explicit right of freedom of speech.

My husbands due process has also been violated. Our home was broken into my the officers of the court to pick up Johnny and we were denied a copy of any paperwork which permitted them to break in and take someone out of here against their will. The judge has still failed to provide proper paperwork regarding that.

Subject: Request for a Thorough Review of Judicial Conduct and Due Process Violations

Dear Members of the Judicial Committee,

I hope this letter finds you well. As a proud citizen of our great nation, I hold a deep reverence for the Constitution and the ideals upon which it was founded. It is in the spirit of preserving the principles of justice, fairness, and the rule of law that I humbly bring to your attention a matter of utmost concern related to the conduct of a judicial officer.

Our Constitution, with its profound commitment to the protection of individual rights and the assurance of due process, stands as a beacon of hope and justice. It is with a heavy heart that I find myself compelled to express deep reservations regarding the actions of judge Caroline Wozjtaszek of the Niagara County Court who, in my experience, has displayed disregard for the rights of myself and other individuals who enter within her courtroom.

The central issue that has led me to reach out to your esteemed committee involves the *violation of my due process rights and a troubling pattern of retaliatory behavior.* Regrettably, I have witnessed instances where individuals, including myself, have encountered obstacles to their constitutional rights when appearing before this judge.

One grievous concern is the apparent disregard for the Fourth Amendment, which assures that one has the right to due process. The Fourteenth Amendment applies to state governments and contains the Equal Protection Clause and the Due Process Clause. The Due Process Clause of the Fourteenth Amendment states, "nor shall any State deprive any person of life, liberty, or property, without due process of law." This clause extends the principles of due process to actions by state governments, ensuring that individuals receive fair treatment and procedures in state-level legal proceedings. It is disheartening to observe a failure to uphold these fundamental protections, leaving individuals vulnerable to potential violations.

Furthermore, the denial of the right to file motions in court especially if the motions have merit, despite assurances to the contrary, has created an environment where individuals along with myself are left without a voice to address concerns and seek justice through proper legal channels. This has resulted in a profound erosion of trust in the fairness and impartiality of the proceedings.

I implore the Judicial Committee to consider conducting a thorough review of the conduct and actions of the aforementioned judge. This review is vital not only to address the concerns I have raised but also to restore faith in the principles upon which our judicial system is built. Our Constitution and the rights it protects are the bedrock of our democracy, and they should be upheld with unwavering dedication.

It is my sincere hope that this review process will provide clarity and transparency, ensuring that the judiciary remains a beacon of justice, fairness, and respect for individual rights. I believe in the resilience of our democratic institutions and the commitment of those who serve to uphold our Constitution.

I am deeply grateful for your attention to this matter and for your dedication to preserving the integrity of our judicial system. Together, we can reaffirm the principles that have guided our nation toward a more just and equitable future. Please feel free contact me regarding this matter my email is wenu4@icloud.com

With profound respect for our Constitution and the principles it represents,

 /s/Johnny Calixte-James.

**JOHNNY CALIXTE-JAMES**

Appellate

JS 44 (Rev. 10/20)                                    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Johnny Calixte-James | Wojtaszek, et al     *24 C V 2 1 1 -* |

| **(b)** County of Residence of First Listed Plaintiff _____ | County of Residence of First Listed Defendant _____ |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Pro Se | |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                    Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [x] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983 civil rights

Brief description of cause:

**VII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [ ] No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Johnny Calixte James
2201 Pine Ave side Apt
Niagara Falls, NY 14301



CERTIFIED

7020 1810 0000

Clerk of
U.S. District
District of Ne
2 Niagara Sq

Retail

UNITED STATES
POSTAL SERVICE®

14202

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
NIAGARA FALLS, NY 14301
MAR 08, 2024

$8.19

R2305M145131-01

OPE TO THE RIGHT
AT DOTTED LINE

MAIL®

0417 3464

USDC - WDNY

MAR 11 2024

BUFFALO

Court

Court for the Western

 York

se, Buffalo, NY 14202